# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF TEXAS
# WACO DIVISION

DARLENE ADAMS, et al.,

      **Plaintiffs,**

v.

SPACE EXPLORATION TECHNOLOGIES
CORP.,

      **Defendant.**

CASE NO.: 6:26-cv-376

## PLAINTIFFS' MOTION TO REMAND AND MEMORANDUM IN SUPPORT

**MOTION TO REMAND**

Plaintiffs move the Court under 28 U.S.C. §1447 to remand this action to the District Court for McLennan County because SpaceX cannot establish either federal officer removal jurisdiction under §1442(a)(1) or federal question jurisdiction under §1331.

**MEMORANDUM IN SUPPORT OF MOTION TO REMAND**

### BACKGROUND

SpaceX owns and operates the McGregor Rocket Development and Test Facility (the "McGregor Facility") where it tests its Merlin and Raptor rocket engines. (Dkt. 1-1, ¶¶ 67–68). Rather than launching rockets, SpaceX bolts these engines to the earth and ignites them, generating concussive acoustic waves and ground-borne seismic tremors. (*Id.* at ¶¶ 68, 79). SpaceX determined when, where, and how to conduct this testing. (*Id.* at ¶¶ 72–73). SpaceX's decisions—such as using un-attenuated horizontal test stands, failing to implement adequate sound suppression, and intentionally stress-testing engines to explosive failure—caused the harm. There is no evidence that any federal officer directed SpaceX to make these decisions. (*Id.* at ¶¶ 81, 260, 267, 272).

Plaintiffs are homeowners who live near the McGregor Facility. (Dkt. 1-1, ¶¶ 2–59). During SpaceX's rocket engine testing operations, the acoustic energy generated by massive rocket engines cracked the foundations of Plaintiffs' homes and caused other related harm. (*Id.* at ¶¶ 67–77). Plaintiffs' homes now require substantial repairs. (*Id.* at ¶¶ 78–86).

Plaintiffs filed suit in the District Court of McLennan County, Texas, seeking damages and other relief arising from that harm and asserting state law claims for negligence; gross negligence; and trespass. (*Id.* at ¶¶ 258–75). SpaceX filed its Notice of Removal on June 12, 2026. (Dkt. 1, ¶¶ 17–49).

### BURDEN OF PROOF

SpaceX bears the absolute burden to establish that its removal was proper. 28 U.S.C. §1441(a); *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). And this Court "shall" remand cases in which it does not have subject matter jurisdiction. 28 U.S.C. §1447(c). SpaceX asserts two independent bases for federal subject matter jurisdiction upon removal: acting under a federal officer (§1442(a)(1)) and federal question (§1331). (Dkt. 1, ¶17). Each basis carries a distinct burden of proof.

While the federal officer statute is "to be broadly construed," *Williams v. Lockheed Martin Corp.*, 990 F.3d 852, 859 (5th Cir. 2021), "the statute is not limitless." *Martin v. LCMC Health Holdings, Inc.*, 101 F.4th 410, 414 (5th Cir. 2024). As with any attempt at removal, "the defendant seeking removal has the burden to establish federal jurisdiction." *Butler v. Coast Elec. Power Ass'n*, 926 F.3d 190, 195 (5th Cir. 2019). As such, SpaceX's burden is to prove that "[t]he government made me do it." *Alsup v. 3-Day Blinds, Inc.*, 435 F. Supp. 2d 838, 848 (S.D. Ill. 2006). SpaceX has provided no evidence that the government gave any direction that prevented SpaceX from complying with its state law obligations to Plaintiffs.

In seeking remand under §1442(a)(1), Plaintiffs may mount either a facial or factual attack on the defendant's jurisdictional allegations. *See Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014); *Papp v. Fore-Kast Sales Co.*, 842 F.3d 805, 810–11 (3d Cir. 2016).[1] A facial attack accepts the defendant's allegations as true; by contrast, a factual attack "contests the truth of the [removing party's] factual allegations, usually by introducing evidence outside the pleadings." *Leite*, 749 F.3d at 1121. A factual attack obligates the defendant to "support [its] jurisdictional allegations with 'competent proof' under the same evidentiary standard that governs in the summary judgment context," rather than simply resting on unsworn assertions in its notice. *Id.* The defendant "bears the burden of proving by a preponderance of the evidence that each of the requirements for subject-matter jurisdiction has been met." *Id.* at 1122. Because Plaintiffs mount a factual challenge, SpaceX bears the burden to justify removal by a preponderance of the evidence.

To establish federal question jurisdiction under § 1331, the "statutory procedures for removal are to be strictly construed." *Syngenta Crop Prot., Inc. v. Henson*, 537 U.S. 28, 32 (2002). "The burden of proof is on the removing party," and any doubts about the appropriateness of removal "must be resolved in favor of remand." *Gasch v. Hartford Acc. & Indem. Co.*, 491 F.3d 278, 281–82 (5th Cir. 2007).

---

[1] Plaintiffs have found no Fifth Circuit case applying the Fed. R. Civ. P. 12(b)(1) facial/factual framework in the removal context as seen in these Third and Ninth Circuit cases, but the framework itself is well established in the Fifth Circuit. *See Paterson v. Weinberger*, 644 F.2d 521, 523 & n.2 (5th Cir. 1981).

**ARGUMENT**

This local property dispute does not support either of SpaceX's grounds for subject matter jurisdiction. First, federal officer jurisdiction requires SpaceX to prove that the government required the action that caused the harm. But here, the federal government expressly disclaimed operational control over SpaceX's testing facilities and methods. Second, SpaceX's reliance on an affirmative defense grounded in federal law to present a federal question fails the strict requirements to invoke the *Grable* doctrine.

## I.   The Court Lacks Federal Officer Removal Jurisdiction.

The federal officer removal statute is designed "to protect the Federal Government from the interference with its 'operations.'" *Watson v. Philip Morris Cos.*, 551 U.S. 142, 150 (2007). To successfully remove a case, a commercial vendor like SpaceX must satisfy three requirements: (1) it must be a person "acting under" a federal officer; (2) the suit must be "for or relating to" any act under color of such office; and (3) it must assert a colorable federal defense. *Chevron USA Inc. v. Plaquemines Par.*, 146 S. Ct. 1052, 1057–58 (2026). "The absence of any element will defeat removal." *Martin v. LCMC Health Holdings, Inc.*, 101 F.4th 410, 414 (5th Cir. 2024). SpaceX fails all three requirements.

### A.   No Federal Officer Directed SpaceX's Activities.

#### 1.   Not every government contractor acts under a federal officer.

To qualify for federal officer removal, SpaceX must prove that a federal superior exerted a sufficient level of "subjection, guidance, or control" over its operations. *Watson*,

5

551 U.S. at 151. "A private firm's compliance (or noncompliance) with federal laws, rules, and regulations does not by itself fall within the scope of the statutory phrase 'acting under' a federal 'official.' And that is so even if the regulation is highly detailed and even if the private firm's activities are highly supervised and monitored." *Id.* at 153.

Nor is holding a government contract sufficient. A contractor qualifies for federal officer removal only when the relationship with the government is "an unusually close one involving detailed regulation, monitoring, or supervision." *Id.* A contractor must "go beyond mere compliance with contractual terms, even if complex, and agree to help carry out the duties or tasks of the federal superior under that superior's strict guidance or control" or show "explicit contractual delegation of legal authority to act on the federal superior's behalf." *Bd. of Cnty. Comm'rs of Boulder Cnty. v. Suncor Energy*, 25 F.4th 1238, 1253 (10th Cir. 2022).

SpaceX falls far short of this standard. Rather than serving as a subjugated proxy performing a governmental duty, SpaceX is an autonomous commercial behemoth testing Merlin and Raptor engines to serve its own commercial interests, including "making humanity multiplanetary"[2] and its Starlink satellite internet service.[3] SpaceX cannot cloak these commercial activities with a NASA uniform simply based on other

[2] *See Mission*, SpaceX, https://www.spacex.com/mission (last visited June 30, 2026); SpaceX's corporate mission is "to build the systems and technologies necessary to make life multiplanetary, to understand the true nature of the universe, and to extend the light of consciousness to the stars." SpaceX S-1/A at 130.

[3] *See* Starlink, https://starlink.com/; *see also* xAI, https://x.ai/; *see also* X, https://x.com/; *see also* Terafab, https://terafab.ai/ (last visited June 30, 2026).

work it does for NASA.

### 2. SpaceX's own contracts defeat its claim of federal control.

SpaceX attempts to manufacture the required "sufficient level of subjection, guidance, or control" by alleging its rocket engine testing fulfills commercial space contracts for federal agencies and is "subject to extensive government oversight." (Dkt. 1, ¶8). That is not enough. Under its Human Space Flight Contract, SpaceX must accommodate NASA's Joint Test Team (JTT) to provide "insight" during testing. Ex. A, § H.15(d)(1). Yet, the contract explicitly strips NASA of any control over SpaceX's operations: "Government JTT members will not provide direction to Contractor personnel on design changes or procedures, or any other aspect of CTS [Crew Transport System] development, production, or operation. Government JTT members provide insight only, and will not approve or disapprove any aspect of the Contractor's CTS design or performance of the contract." *Id.* Further, notwithstanding such government insight, "the Contractor assumes full performance responsibility as set forth in this contract." *Id.* at § H.15(g).

Similarly, under its Human Landing System Contract, NASA is forbidden from directing SpaceX's work: "The NASA Insight Team is not authorized on behalf of the Government to direct Contractor performance, execute major or minor contract modifications, or otherwise provide direction on contractual requirements or contract interpretation." Ex. B, § (d)(2) at H-22. NASA's insight "does not affect or modify the Contractor's responsibility for full performance as set forth in this contract." *Id.* § (g)(5)

7

at H-25.

### 3. Federal testing standards dictate engine performance, not operations.

Federal equipment specifications are not a license to commit autonomous torts. SpaceX points to technical directives like NASA-STD-5012C and SMC-S-016. (Dkt. 1, ¶¶8–12) covering "hot-fire engine tests required to qualify the engine for service life" but omits the standard's express disclaimer: "Engine hot-fire test requirements are not addressed in this standard" (§1). SpaceX conflates a general requirement to conduct a hot-fire engine test with a federal mandate dictating *how to* conduct that test. Similarly, while SMC-S-016 dictates specific acoustic and vibration margins for engine component testing, *see, e.g.,* SMC-S-016 §§ 6.3.5.3, 6.3.6.3, it says nothing about hot-fire engine testing itself including testing facility infrastructure, management, testing parameters, and environmental mitigation. *See* NASA-STD-5012C; SMC-S-016. The government may have dictated the *what* with respect to the quality of rocket engine components that can withstand sound and vibration performance levels, but SpaceX autonomously controlled the *how* of static-fire engine testing.

While the standards for federal officer removal and immunity are distinct, there is a dividing line between federally directed facility operations and autonomous commercial testing. When a contractor selects its test site and designs its test stands, it does not act under federal direction. *See Smith v. Lockheed Propulsion Co.*, 247 Cal. App. 2d 774, 790 (1967) (rejecting rocket contractor's claim to shared governmental immunity because

there was "no evidence that the Government selected the test site, prescribed the specifications for the construction of the test stand or its location, or specified the manner of conducting the test"); *see also Berg v. Reaction Motors Div., Thiokol Chem. Corp.*, 37 N.J. 396, 417–18 (1962) (similarly rejecting federal contractor's immunity defense regarding X-15 rocket engine testing because government did not prescribe test site, location of test stands, or testing manner). Accordingly, a contractor operates under federal direction only when the government actually commands the facility infrastructure. *See Pigott v. Boeing Co.*, 240 So. 2d 63, 63–64 (Miss. 1970) (no liability arising from testing at federal facility where "NASA constructed all the facilities ... and all test site facilities.").

The contrast here is dispositive. The McGregor Facility is not a NASA facility; it is SpaceX's private property. (Dkt. 1-1, ¶67). NASA did not build the horizontal test stands, nor did it dictate their proximity to Plaintiffs' homes. NASA did not command SpaceX to bolt its Merlin and Raptor engines to un-attenuated horizontal test stands. NASA did not forbid SpaceX from taking steps to protect nearby properties by constructing acoustic berms and acoustic deluge systems, using vertical flame trenches, or selecting a test site further from residential communities. Because SpaceX retained complete operational discretion over the infrastructure that created the harm, it was not acting under federal subjection or control.

### 4.      SpaceX is a commercial vendor, not a commandeered wartime contractor.

SpaceX cannot drape its wholly commercial operation in the cloak of a defense

contractor. Indisputably, "[w]artime production is the paradigmatic example" of a special relationship satisfying the "acting under" prong. *Suncor*, 25 F.4th at 1253. For example, the defendants in *Chevron* were federal contractors that refined aviation gasoline the government desperately needed to fight in World War II. 146 S. Ct. at 1058.

In military procurement contexts, removal is only appropriate when the government directly mandates the specific use of materials. *See, e.g., Latiolais v. Huntington Ingalls, Inc.*, 951 F.3d 286, 289 (Navy contractually required use of asbestos). That limit ends SpaceX's attempt to manufacture federal jurisdiction here; SpaceX builds its own rockets for its own commercial purpose and operates a private proving ground to serve its own private launch goals.[4]

### 5.     Regulatory oversight and policy alignment are not federal proxies.

SpaceX's reliance on executive branch policy and regulatory oversight is also legally deficient. SpaceX cites federal directives like Executive Order 14369 regarding "American Space Superiority" and alleges that NASA maintains a "full-time presence" to oversee testing. (Dkt. 1, ¶¶ 2, 13). But NASA does not oversee any details of SpaceX's testing. Even at that, a private firm's compliance with federal rules does not fall within the scope of acting under a federal official, "even if the regulation is highly detailed and even if the private firm's activities are highly supervised and monitored." *Watson*, 551 U.S. at 153.

---

[4] According to SpaceX's launch history, 401 of its 690 completed missions (i.e., 58%) alone are for its Starlink business. *See* Launches, SpaceX, https://www.spacex.com/launches (last visited July 1, 2026).

SpaceX's cited authorities do not change that. NASA is not statutorily mandated to build and test rockets in McLennan County. This readily distinguishes this case from *Caris MPI, Inc. v. UnitedHealthcare, Inc.*, where a Medicare Advantage Organization enjoyed the status of a federal officer because it provided health insurance coverage that Medicare would otherwise have been statutorily required to provide directly to enrollees. 108 F.4th 340, 348 (5th Cir. 2024). The presence of federal "boots-on-the-ground" to ensure contract milestones are met (Dkt. 1, ¶21) is supervision and not control; it is the hallmark of a regulator and a customer, not a federal superior commandeering a private proxy. *See Watson*, 551 U.S. at 149–50.

SpaceX cannot satisfy the "acting under" requirement of §1442(a)(1).

### B.    Plaintiffs' Property Damage Claims Are Too Remote to Relate to SpaceX's Federal Contracts.

While the Supreme Court recently recognized that the "relating to" requirement sweeps broadly, it also cautioned that the standard is not "so broad that it is meaningless." *Chevron*, 146 S. Ct. at 1060. To satisfy the federal officer removal statute, the connection between the challenged conduct and the federal duties cannot be "tenuous, remote, or peripheral." *Id*. at 1061.

Case law does not give SpaceX the blank check interpretation it desires. For instance, SpaceX cites *Exxon* but ignores that the Supreme Court cited that case in *Chevron* as a prime example of a connection that fails the removal test, noting that Exxon's commercial advertising was simply too attenuated from its historical government production. *Id.; see*

*D.C. v. Exxon Mobil Corp.*, 89 F.4th 144, 156 (D.C. Cir. 2023). A peripheral connection does not confer jurisdiction.

SpaceX's reliance on *Chevron* fails on the facts because Chevron's putative liability grew directly out of its efforts to pump crude oil for the specific purpose of refining it into aviation gasoline for the United States military during an "all-hands-on-deck" World War II effort. *Chevron*, 146 S. Ct. at 1061–62. The link between the challenged drilling and the sovereign's wartime survival was inescapable. SpaceX, by contrast, operates a private high-volume rocket manufacturing commercial pipeline and tests those engines to support its own commercial launch cadence. (Dkt. 1-1, ¶¶ 69, 78, 84).

The structural damage to Plaintiffs' homes is the result of an aggregate, daily commercial trespass. Plaintiffs are not suing over an isolated engine test destined for a federal agency; rather, Plaintiffs allege that the continuous shaking and acoustic resonance from SpaceX's relentless testing cadence in support of its commercial objectives has destroyed homes. (Dkt. 1-1, ¶¶ 74–76, 85). Because this daily seismic assault is driven by SpaceX's commercial launch cadence, the connection between the aggregate property damage and a handful of isolated federal contracts is highly attenuated. *See Chevron*, 146 S. Ct. at 1061.

### C.    SpaceX Cannot Establish a Colorable Federal Defense.

To successfully remove a case under §1442(a)(1), a defendant must assert a "colorable federal defense." *Mesa v. California*, 489 U.S. 121, 129 (1989). A defense is colorable if it is

"legitimate and could reasonably be asserted, given the facts presented." *Williams*, 990 F.3d at 861.

SpaceX asserts five federal defenses: the Defense Production Act (the "DPA"), the *Boyle* government contractor defense, *Yearsley* derivative sovereign immunity, express preemption under the Commercial Space Launch Act, and conflict preemption. (Dkt. 1, ¶¶ 28–43). Each of these defenses requires a foundational factual showing of specific federal direction, precise specifications, or irreconcilable conflict. The actual text of the NASA contracts and SpaceX's public statements disprove SpaceX's unverified assertions.

### 1.    The Defense Production Act

To assert a colorable defense under the DPA, a contractor must show its actions resulted "directly or indirectly from compliance with a rule, regulation, or order" issued under the Act. 50 U.S.C. § 4557. SpaceX alleges its federal contracts carry DPA ratings and that these contracts "require[] (and required) testing activities at the McGregor facility." (Dkt. 1, ¶29). But alleging a rating exists is not evidence of compliance.

Under the terms of the NASA contracts (Exs. A, B), the federal government exercises "insight only" and disclaims operational control over SpaceX's testing procedures. Because Plaintiffs' extrinsic evidence actively contests SpaceX's broad allegations of federal subjection, the presumption of truth gives way to the heightened evidentiary standard. SpaceX has provided no evidence that operating un-attenuated horizontal test stands or operating its testing infrastructure and parameters were required for

13

compliance with specific federal orders; rendering the defense facially and factually deficient rather than colorable.

### 2.   The *Boyle* Government Contractor Defense

The *Boyle* defense requires reasonably precise federal specifications, not general procurement goals. *Boyle v. United Techs. Corp.,* 487 U.S. 500, 512 (1988). SpaceX points generally to federal testing standards. (Dkt. 1, ¶33). But the specific standard it relies on expressly declares that "Engine hot-fire test requirements are not addressed in this standard." NASA-STD-5012C §1. This stands in stark contrast to *Winters v. Diamond Shamrock Chem. Co.*, where the government compelled the contractor's work by explicitly prohibiting the contractor from implementing safety warnings. 149 F.3d 387, 398–400 (5th Cir. 1998). There are no reasonably precise government specifications that caused the harm to Plaintiffs' homes. *Boyle* does not provide a colorable defense.

### 3.   *Yearsley* Derivative Sovereign Immunity

To claim derivative sovereign immunity, a contractor must prove its actions were taken pursuant to authority "validly conferred" by the federal government. *Yearsley v. W.A. Ross Const. Co.,* 309 U.S. 18, 20–21 (1940). But SpaceX's NASA contracts actually prohibit federal officers from authorizing or directing its specific testing methodologies. (Exs. A, B). SpaceX has offered nothing in its Removal for the Court to permit a finding by a preponderance of the evidence that NASA or any other agency actually authorized or directed the specific facility infrastructure management, testing methods, and testing

14

parameters that caused Plaintiffs' property damage. Hence, SpaceX cannot borrow the sovereign's immunity shield to establish a colorable *Yearsely* defense.

### 4. Express Federal Preemption

Preemption requires proof of a conflict with state law duties. The Commercial Space Launch Act (CSLA) preempts state laws only if they are "inconsistent with this chapter." 51 U.S.C. § 50919(c)(1). The CSLA governs launch sites, not component testing at far away sites. A "launch" is defined as placing or trying to place a "launch vehicle" into outer space or a suborbital trajectory. § 50902(7). A "launch vehicle" is a vehicle built to operate in space. § 50902(11). The statute limits launch preparation activities to activities that "take place at a launch site." §50902(7)(C). By SpaceX's own admission, its McGregor Facility is its "main test site for SpaceX's engines," not a launch or reentry site. (Dkt. 1, ¶6). Under the CSLA, a Merlin or Raptor engine tethered to a concrete test stand is not a "launch vehicle," and a static-fire test is not a "launch." Because the CSLA does not govern component-level engine testing, the statute is facially inapplicable and cannot expressly preempt Plaintiffs' state-law property claims.[5]

Even if the CSLA could somehow be applied to grounded engine tests performed well outside launch sites, despite its textual limits, SpaceX's defense fails factually. SpaceX has not produced evidence of the specific CSLA licenses authorizing each engine testing

---

[5] SpaceX cites two cases to stretch the scope of the CSLA, but both deal with *implied* preemption. *See Teltech Sys., Inc. v. Bryant*, 702 F.3d 232, 237 (5th Cir. 2012) (declining to resolve express preemption because federal statute "impliedly preempts" state law); *City of Burbank v. Lockheed Air Terminal Inc.*, 411 U.S. 624, 633 (1973) (finding implied field preemption but acknowledging "no express provision of pre-emption").

parameters that damaged Plaintiffs' homes. Without competent evidence, SpaceX cannot demonstrate a colorable express preemption defense.

### 5. Conflict Federal Preemption

A conflict requires competing commands, not vague policy objectives. Conflict preemption occurs when compliance with both federal and state law is impossible, or when state law stands as an obstacle to the execution of federal objectives. *See Arizona v. United States*, 567 U.S. 387, 399–400 (2012). But to demonstrate a conflict, SpaceX must first show what its contracts actually require.

NASA's contracts with SpaceX expressly reserved SpaceX's operational autonomy. SpaceX has not proven that mitigating acoustic and seismic damage was either physically impossible or forbidden by federal mandate. On the current record, no such proof exists, and such an evidentiary void cannot establish a colorable conflict preemption defense.

### D. SpaceX Can Meet no Element of Federal Officer Jurisdiction and Certainly Not All of the Elements.

SpaceX cannot prove it acted under a federal officer because the federal agencies expressly reserve SpaceX's operational autonomy. It cannot prove Plaintiffs' claims relate to its federal contracts because its own launch history reveals that its aggregate commercial testing is too remote from its discrete federal procurement. Finally, it cannot establish a colorable federal defense. Such proof is absent. Stripped of the unsworn assertions in its Removal, SpaceX is nothing more than a private commercial enterprise attempting to federalize a local property dispute. Because SpaceX has failed to carry its

evidentiary burden to satisfy the strict requirements of 28 U.S.C. §1442(a)(1), this Court lacks subject matter jurisdiction under the federal officer removal statute.

## II.     The Court Lacks Federal Question Jurisdiction Under 28 U.S.C. §1331.

Federal question jurisdiction generally exists only when a federal issue appears on the face of the complaint. *See Box v. PetroTel, Inc.*, 33 F.4th 195, 201–02 (5th Cir. 2022). Plaintiffs have pled strictly state-law claims for negligence, gross negligence, and trespass. (Dkt. 1-1, ¶¶ 258–75). SpaceX invokes the *Grable* doctrine, but the Supreme Court has firmly confined this doctrine to a "special and small" and "slim category" of cases. *Empire Healthchoice Assur., Inc. v. McVeigh*, 547 U.S. 677, 699, 701 (2006).

Under *Grable*, defendant must demonstrate that a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance. *Gunn v. Minton*, 568 U.S. 251, 258 (2013). SpaceX fails this exacting test. Federal space policy and regulatory compliance are merely anticipated defenses, not essential elements of Plaintiffs' property damage claims. Further, resolution of a fact-bound, localized dispute over damage caused by acoustic and seismic trespass lacks anything approaching systemic national importance required to confer jurisdiction.

### A.     A Federal Defense Is Not a Federal Question.

To satisfy the first prong of the *Grable* doctrine, a federal issue must be an essential element of the plaintiff's affirmative claim. *See Box*, 33 F.4th at 201–02. The Fifth Circuit

17

has explicitly foreclosed attempts to manufacture *Grable* jurisdiction using federal defenses. In *Box*, the defendant removed the case and argued that a state-law breach of contract claim "necessarily raised" a federal issue because the contract was allegedly void under federal antitrust law. *Id*. at 201. The Fifth Circuit remanded, holding that the affirmative defense of contract illegality did not appear on the face of a well-pleaded complaint and could not support federal jurisdiction. *Id*. at 201–02.

SpaceX's jurisdictional argument suffers from the same fatal defect. Plaintiffs' Original Petition alleges purely state-law claims arising from the physical bombardment of their homes by acoustic and seismic energy. (Dkt. 1-1, ¶¶ 258–75). To prove these claims, Plaintiffs must establish the elements of each under Texas law. *See, e.g., Nabors Drilling, U.S.A., Inc. v. Escoto*, 288 S.W.3d 401, 404 (Tex. 2009). Proving those affirmative elements does not require interpreting federal space policy, decoding NASA testing specifications, or construing the Commercial Space Launch Act. A Texas jury is fully capable of determining whether damaging a family's home with acoustic energy breaches an ordinary duty of care without ever consulting a federal technical manual. Instead, SpaceX attempts to inject federal law by pointing to its federal contracts and regulatory oversight. (Dkt. 1, ¶47).  But claims that its testing is federally authorized and therefore immune from state tort liability merely sets up an affirmativedefense. *Box* makes clear the insufficiency of that ploy to crate federal question jurisdiction.  *See Box*, 33 F.4th at 201–02. Anticipated defenses do not open the federal courthouse doors.

18

**B.     Plaintiffs' Claims Are Fact-Bound and Situation-Specific.**

Fact-bound state law disputes do not belong in federal court. To fit within the narrow exception contemplated by *Grable* a dispute must present a "nearly 'pure issue of law,' one 'that could be settled once and for all and thereafter would govern numerous [other] cases.'" *McVeigh*, 547 U.S. at 700.  By its terms, the exception excludes "fact-bound and situation-specific," cases.  *Id*. at 701; *Singh v. Duane Morris LLP*, 538 F.3d 334, 339 (5th Cir. 2008) (no jurisdiction where federal issue was "predominantly one of fact.").

And this case is entirely fact-bound. Plaintiffs' claims turn on local decibel levels, seismic measurements, testing frequencies, soil composition, and the resulting structural degradation to specific homes in McGregor, Texas, and surrounding neighborhoods, not legal interpretations of national space policy.  Resolving these questions provides no basis to establish a sweeping rule of federal law that governs other aerospace facilities. It will simply determine whether SpaceX's specific testing operations breached a standard of care owed to nearby families for the protection of their homes.

SpaceX's misplaces its reliance on two cases to argue for systemic national importance because both cases involved extraordinary federal interests that are wholly absent here. (Dkt. 1, ¶¶ 47–48). In *Cloyd*, the Fifth Circuit found *Grable* jurisdiction because the proving plaintiffs' claims required analyzing the military's tactical decision-making in evacuating an active military base during a missile strike in a foreign war zone. *Cloyd v. KBR, Inc.*, 2022 WL 4104029, *3 n.3 (5th Cir. 2022). In *Tennessee*, the plaintiff alleged that an entire oil

19

and gas industry violated several statutes, directly risking the integrity of a massive federal levee system. *Bd. of Comm'rs of Se. La. Flood Prot. Auth.-E. v. Tennessee Gas Pipeline Co.*, 850 F.3d 714, 720–21 (5th Cir. 2017).

Unlike *Cloyd*, SpaceX's autonomous, predominantly commercial engine testing on private Texas real estate is not a war zone. Nor does it threaten federal infrastructure, like in *Tennessee*. The Texas state court is fully competent to apply traditional tort principles to SpaceX's conduct. A local property damage dispute does not become a matter of national importance simply because the defendant builds rockets or contracts to sell some of its products and services to agencies of the federal government.

### C.    Federal Jurisdiction Would Disrupt the Federal-State Balance.

Federalizing state torts upsets the constitutional design. Even if SpaceX could identify a necessary and actually disputed federal issue, it cannot satisfy the final *Grable* requirements: substantiality and the preservation of the federal-state judicial balance. *See Gunn*, 568 U.S. at 258. *Grable* mandates that courts assess the "disruptive portent in exercising federal jurisdiction." *Grable & Sons Metal Products, Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 314.

Here, the disruptive portent is massive. Property law, trespass, and negligence are traditionally the exclusive domain of state courts. *Cf. Singh,* 538 F.3d at 340 (declining jurisdiction where it would constitute a "substantial usurpation of state authority in an area in which states have traditionally been dominant."). SpaceX's theory of jurisdiction

would permit a defendant to remove a local property damage case simply by pointing to its federal contracts and the general important of its industry, which would "herald[] a potentially enormous shift of traditionally state cases into federal courts." *Grable*, 545 U.S. at 319. Every defense contractor, aerospace company, and federal grantee would be entitled to a federal forum for even the most basic claims, like slip-and-falls, car accidents, and trespass claims.

The Supreme Court explicitly rejected such jurisdictional overreach in *Gunn,* holding that even where a state malpractice claim requires resolving an underlying federal patent question, the state court's resolution would have no broader effects on the federal system and did not belong in federal court. 568 U.S. at 264–65. The same is true here. A Texas state court resolving a Texas property damage dispute will not disrupt federal space policy, usurp NASA's authority, or rewrite the Commercial Space Launch Act. It will simply hold a corporate neighbor accountable for the physical damage it causes under well-established state law. Plaintiffs seek traditional common-law damages to repair their homes, not a prospective regulatory injunction against SpaceX's launch manifest. Because SpaceX cannot satisfy the strict, four-part *Grable* test, it cannot manufacture federal question jurisdiction.

## CONCLUSION

For the reasons stated, this Court lacks subject-matter jurisdiction, and the case must be remanded to the 414th Judicial District Court for McLennan County.

21

**Dated: July 13, 2026**

**MARTINEZ & TIJERINA P.L.L.C**

/s/ *Benigno Martinez*
Benigno (Trey) Martinez (D. Tex. 23945)
1201 E. Van Buren
Brownsville, Texas 78520
Telephone: (956) 550-4868
State Bar No. 00797011
trey@mbmtlawfirm.com

Richard M. Paul III (*PHV* forthcoming)
Ashlea G. Schwarz (*PHV* forthcoming)
Laurence O'Donnell (*PHV* forthcoming)
**PAUL LLP**
601 Broadway Boulevard, Suite 600
Kansas City, Missouri 64105
Telephone: (816) 984-8100
Rick@PaulLLP.com
Ashlea@PaulLLP.com
Laurence@PaulLLP.com

**GUERRA LLP**

/s/ *Francisco Guerra IV*
Francisco "Frank" Guerra IV (Tex. Bar No. 00796684)
Jennifer A. Neal (Tex. Bar No. 2408934)
Bailey E. VanNatta (Tex. Bar No. 24119113)
875 E. Ashby Place, Suite 1200
San Antonio, Texas 78212
Telephone: (210) 447-0500
fguerra@guerrallp.com
jneal@guerrallp.com
bvannatta@guerrallp.com

Cristobal M. Galindo (Tex. Bar No. 24026128)
**Cristobal M. Galindo, PC**
4151 Southeast Freeway #602
Houston, Texas 77027
cmg@galindolaw.com

**ATTORNEYS FOR PLAINTIFFS**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this the 13th day of July 2026, a true and correct copy of the foregoing document was filed and sent to all counsel of record by the use of the CM/ECF notice of electronic filing system.

/s/ *Francisco Guerra, IV.*
Francisco Guerra, IV.